THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE OFFICE OF THE COMPTROLLER OF THE CURRENCY, | ) ) ) | C.A. No:  08 CA 10077 RGS |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| BDO SEIDMAN, LLP, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant BDO Seidman, LLP ("BDO") hereby opposes the Cross-Motion of the Office

of the Comptroller of the Currency ("OCC") for Summary Judgment.

In its $25 million state court lawsuit against BDO, Bank of America, N.A. (the "Bank" or

"BoA") refused to produce to BDO for use under a litigation-only Stipulated Protective Order

numerous emails, memos and notes written by Bank employees, emails from OCC personnel and

internal Bank reports that refer to a 2003 OCC report, all referring solely to the Bank's loan to

CCNNE (the "Withheld Documents").[1]  The Bank asserted an "OCC Regulatory Privilege"

which, at most, is a very limited qualified privilege that does not extend to factual information

and, even with respect to regulator conclusions, can be overridden by a litigant's need for the

information.  As with any other privilege, it is the court's function to adjudicate applicability of

the bank examination privilege.

In response to BDO's motion to compel production of the 41 Withheld Documents, the

Bank—at OCC's direction—argued the state court had no jurisdiction to order production.  The

---

[1] For ease of reference, "Withheld Documents" also includes the October 2003 report issued by OCC to BoA (the "OCC Report"), which the Bank produced five times to BDO before listing it on its privilege log.

Bank contended in the Superior Court that OCC had sovereign immunity, and asserted that BDO was required by 12 C.F.R. §§ 4.31-4.40 (the "OCC Regulations") to request the Withheld Documents directly from OCC. The OCC Regulations purport to require a litigant seeking information for use in a lawsuit to show, *inter alia*, that the requested documents and information are "relevant to the purpose for which it is sought" and "that other evidence reasonably suited to the requester's needs is not available from any other source." 12 C.F.R. § 4.33(a)(3). In response, OCC may—in its "sole discretion"—refuse to produce the documents and information for a variety of reasons, including the requester's failure to show (1) "a compelling need for the information", (2) relevance or (3) an absence of "other evidence reasonably suited to the requester's need." 12 C.F.R. § 4.35(a). According to OCC, review of OCC's refusal to produce documents and information is limited to an action under the Administrative Procedure Act, in which the federal court would apply a deferential abuse-of-discretion standard.[2]

The state court correctly rejected these arguments, as BDO has demonstrated to this Court in its motion to dismiss and supporting memorandum. Docket Nos. 3-4 herein.

OCC's cross-motion for summary judgment seeks a declaration that the Superior Court lacked jurisdiction to order production of the Bank's Withheld Documents and, for that reason, OCC also seeks a declaration vacating the state court's production orders. In addition, OCC demands this Court to declare that BDO must apply for OCC's permission to use the Withheld Documents, which would mean this Court has no authority to adjudicate OCC's and BoA's assertion of the bank examination privilege.

---

[2] In contrast, the rules controlling discovery in Superior Court permit a litigant's discovery of documents and information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action", and "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Mass. R. Civ. P. 26(b)(1). Privilege objections are adjudicated by the state trial judge. *Commonwealth v. Pelosi*, 441 Mass. 257, 260 (2004).

Both prongs of OCC's motion must be denied.

The state court did have jurisdiction to order production of the Withheld Documents. OCC's sovereign immunity argument fails for several reasons. First, as BDO has not brought suit against OCC, sovereign immunity is not implicated. Second, the Withheld Documents are not federal property, akin to federally-owned real estate, as OCC contends. BDO, in any case, is not claiming ownership of the documents. BDO merely seeks to use them for the limited purpose of defending itself against BoA's multi-million dollar claims. OCC mistakenly conflates ownership with privilege. Sovereign immunity is not implicated by a privilege assertion. Third, OCC waived its sovereign contention by twice inviting the state court to adjudicate OCC's position. Finally, assuming *arguendo* this Court concludes OCC's sovereign immunity argument has merit with respect to truly "non-public OCC information," there are fact issues regarding which of the 41 Withheld Documents, if any, include such information. OCC has presented no affidavit or other proof that emails and internal memos authored by Bank employees—or any of the other Withheld Documents—contain "non-public OCC information." Having failed to offer any factual support for its bedrock assertion, OCC's motion for summary judgment must be denied and this action should be dismissed.

This Court need only reach the second portion of OCC's motion if it concludes as a matter of law the state court lacked jurisdiction to order production of the Withheld Documents. In that event, this Court should determine whether the limited bank examination privilege applies to any of the 41 Withheld Documents. If any such documents or portions are covered, the Court would then decide whether the qualified privilege has been overcome by BDO. The law does not support OCC's contention that OCC rather than this Court should make the privilege determinations. OCC has the burden of proving to this Court (again, assuming solely for

3

purposes of argument that the state court lacked jurisdiction) applicability of the privilege. OCC

has submitted nothing to support its privilege claim regarding each of the 41 Withheld

Documents. Having failed to offer any evidence on a matter on which it has the burden of proof,

OCC's motion for summary judgment must be denied and judgment of dismissal should be

entered for BDO. Alternatively, at a minimum, adjudication of the privilege assertions cannot be

determined on the present record. BDO needs to see the Withheld Documents in order to have a

fair opportunity to argue the claimed privilege does not apply and, to argue in any instance in

which non-factual matters are disclosed that the qualified privilege must yield to BDO's showing

of need.

In sum, as argued more fully below, this action should be dismissed. Short of dismissal,

OCC's cross-motion for summary judgment should be denied, and this Court should adjudicate

OCC's assertion of the bank examination privilege with respect to each of the 41 Withheld

Documents.

<u>**RELEVANT FACTS AND PROCEDURAL HISTORY**</u>

For sake of brevity, BDO refers the Court to the statement of facts and unique procedural

course described in BDO's memorandum in support of its motion to dismiss [Docket No. 4

herein], as supplemented by BDO's Response to Plaintiff's Statement of Facts and Defendant's

Concise Statement of Additional Undisputed Material Facts and the Affidavit of Kristin M.

Cataldo, all filed herewith. BDO observes here that OCC's presentation of the relevant facts is

substantively incomplete, especially in its (1) omission of OCC's communications with and

directions to BoA regarding the Superior Court's adjudication of the discovery dispute, (2)

truncated description of OCC's appearance in the Superior Court and (3) lack of any affidavit or

other evidentiary support for its assertions that the 41 Withheld Documents comprise "non-public OCC information" or fall within the very narrow qualified bank examination privilege.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *McCarthy v. Northwest Airlines*, 56 F.3d 313, 314 (1st Cir. 1995). The movant "bears the burden of identifying the evidence that demonstrates an absence of a disputed material issue of fact" which would entitle it to summary judgment as a matter of a law. *Articulate Systems, Inc. v. Apple Computer, Inc.*, 53 F. Supp.2d 62, 65 (D. Mass. 1999). When evaluating a motion for summary judgment, "the court must view the evidence and draw factual inferences favorable to the party opposing the motion." *Id.*

### II.   OCC'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AND THIS CASE SHOULD BE DISMISSED BECAUSE THE STATE COURT HAD JURISDICTION TO ORDER THE BANK TO PRODUCE THE 41 WITHHELD DOCUMENTS

OCC's contention that sovereign immunity deprived the state court of jurisdiction to order the Bank to produce the Withheld Documents is incorrect for the several independent reasons below.[3]

#### A.    Sovereign Immunity Does Not Apply to a Request for Documents

Sovereign immunity protects the federal government from suit brought against it without its consent. The rationale is to protect the public fisc. Although there is no case directly on point from the Supreme Court or First Circuit, the weight of authority concludes that "federal agencies

---

[3] In addition to sovereign immunity, OCC's Complaint alleges the Supremacy Clause deprived the state court of jurisdiction. OCC has abandoned that argument in its summary judgment memorandum, which argues only sovereign immunity.

cannot claim sovereign immunity to avoid compliance with third-party subpoenas." *In re Vioxx Products Liab. Lit.*, 235 F.R.D. 334, 343 (E.D. La. 2006)(collecting authorities). The decisions reason that requests for documents do not seek to impose liability on the United States. For example, in *Marshall v. Elward*, 399 N.E.2d 1329, 1331 (Ill. 1980), the Illinois Supreme Court ruled that sovereign immunity did not preclude a state trial court's order directing OSHA, a non-party, to produce its investigative file.

> In the present case, the U.S, Department of Labor, or its agent, OSHA, is not a party to the civil suit brought by [plaintiff]; neither is it subject to the imposition of liability. No claim against money or property of the United States is sought. The United States is not threatened with the loss of property nor are its rights in property jeopardized by this action. Petitioner [OSHA] is merely ordered to divulge information in its possession and only to the extent permissible under existing privileges. Under the circumstances here, we do not find a subpoena duces tecum constitutes a "suit."

*Id.*

Here, OCC is an additional step removed from a suit against it. BDO has not sued OCC nor has BDO even served OCC with a subpoena. Rather, BDO requested the Bank to produce discoverable documents in the Bank's files. Not surprisingly, OCC has been unable to cite any case in which any court has ruled that sovereign immunity stands in the way of production of documents held—and in many instances authored—by a regulated entity that has commenced affirmative litigation against the requesting party.

OCC's heavy reliance on *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) is misplaced. The decision was expressly limited to whether a subordinate Department of Justice official could rely on internal housekeeping regulations to refuse compliance with a subpoena. The Court did not consider whether the Attorney General or the agency itself could refuse to produce documents in response to a subpoena. "[T]he case raises no question as to the power of the Attorney General himself to make such a refusal.... The validity of the superior's action is in

6

issue only insofar as we must determine whether the Attorney General can validly withdraw from his subordinates the power to release department papers." *Id.* at 467. Justice Frankfurter wrote a concurring opinion to confirm the narrow confines of the Court's decision: "There is not a hint in the Boske opinion [a precedent on which the Court relied] that the Government can shut off an appropriate judicial demand for such papers.... [W]hether, when and how the Attorney General himself can be granted an immunity from the duty to disclose information contained in documents within his possession that are relevant to a judicial proceeding are matters not here for adjudication.... In joining the Court's opinion I assume...that the Attorney General can be reached by legal process." *Id.* at 472. Tellingly, the words "sovereign immunity" appear nowhere in the *Touhy* opinion. And the case itself began in federal district court. It had nothing to do with state court jurisdiction to compel a federal agency's compliance with an otherwise proper state-issued subpoena.[4]

Some courts, including those cited by OCC, have subsequently misapplied *Touhy*, incorrectly relying on it to pronounce limits on state court authority that in fact do not exist. For example, in *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996), the court correctly observed that *Touhy* held an agency *employee* need not produce documents. But the court then jumped to the conclusion that the *state court* lacked jurisdiction to enforce a subpoena issued to the *agency* itself. *Touhy* does not support that ruling. Even OCC itself had not argued in *Houston Business* that the state court lacked jurisdiction to decide a private litigant's motion to compel OCC compliance with a subpoena. The D.C. Circuit raised the jurisdictional question *sua sponte*. 86 F.3d at 1211.[5]

---

[4] Utterly groundless is OCC's contention that BDO's success in this case would require this Court to effectively "overrule the Supreme Court's *Touhy* decision." OCC Mem., at 15.

[5] *Dicta* in *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 58 n.6 (1st Cir. 2007) refers to *Houston Business* and some other cases cited by OCC. The First Circuit, however, did not hold in *Puerto Rico* that sovereign

In *United States v. Bank of New York & Trust Co.*, 296 U.S. 463 (1936), the Court rejected the federal government's argument that a state court lacked jurisdiction to adjudicate the government's claim against funds and property of liquidated insurers. Requiring the government to present its claim in state court would not impair the government's sovereign immunity, as "the United States would be an actor—voluntarily asserting what it deemed to be its rights—and not a defendant." *Id.* at 480.

In short, neither *Touhy* nor any other Supreme Court case support OCC's central legal proposition that a document request to a federal agency—never mind a document request to a party regulated by a federal agency—is a suit against the United States within the reach of the sovereign immunity doctrine. OCC has failed to present any affidavit, other evidence or even bare argument that any liability will be imposed on the United States as a consequence of the Superior Court's discovery orders. The state court had jurisdiction.

**B.      The Bank's Documents Are Not Federal Property, and In Any Event, BDO Is Not Seeking Ownership of Such Documents**

Assuming *arguendo* BDO's document request to BoA could be considered a suit against OCC, the sovereign immunity defense still fails because BDO is not seeking ownership of government property.

OCC's argument begins with the unremarkable proposition that a state court may not divest the federal government of its property, citing *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 226 (1957), a case in which "petitioner [in state court] sought to have itself declared owner of the mineral rights under *land owned by the United States.*" (Emphasis added). OCC then takes a breathtaking leap, equating the 41 Withheld Documents with land owned by the

---

immunity divested a state court of jurisdiction to rule on a litigant's request for documents possessed by a party-adversary who asserted a privilege objection. The lawsuit in *Puerto Rico* began in federal court, not state court, and involved the FBI's refusal to produce privileged law enforcement techniques in response to a subpoena issued by Puerto Rico's criminal law enforcement official. The decision is not on point.

United States.  Thus, OCC's argument relies on two predicates:  (1) documents in which a privilege is asserted are the same as land for purposes of sovereign immunity analysis and (2) all 41 Withheld Documents are OCC property as a matter of law.

Both OCC predicates are incorrect.

Assertion of a privilege—particularly a limited qualified privilege—regarding a document is substantively different from fee ownership of land.  The latter involves the most respected property right at common law.  The former often has nothing to do with ownership, and is always determined by the judiciary.  OCC's claim to own emails authored by Bank employees and its report and communications to the Bank has no statutory support.  Rather, at least two statutes suggest otherwise.  According to OCC, the Housekeeping Statute, 5 U.S.C. § 301, is the statutory support for its Regulations, including the particular one, 12 C.F.R. 4.32(b)(1) and (2), on which OCC relies for its claim to own the 41 Withheld Documents. Section 301, however, states:  "This section does not authorize withholding information from the public or limiting the availability of records to the public."  Simply put, 5 U.S.C. § 301 is directly contrary to OCC's argument here.  OCC's effort to rely on sections of Title 12 fares no better.  For example, 12 U.S.C. § 481 authorizes examination of national banks, but says nothing about ownership of Bank records or communications regarding the examination.  To divest the Bank of ownership and control of documents in its files, including its own emails, more is required than a statute allowing regulatory examinations.  Section 1906 of Title 18 indicates that the only confidential portion of an OCC examination report are "the names of borrowers [and] the collateral for loans", and even that statute recognizes the board of directors of the bank may permit release of such information in an OCC Report.

None of the cases cited by OCC hold that a federal agency is immune from judicial scrutiny of the agency's privilege assertion. The law is otherwise. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds,* 345 U.S. 1, 9-10 (1953). For sake of brevity, BDO refers the Court to the cases cited in support of BDO's motion to dismiss. Docket No. 4, at 8-14.

Nearly half the Withheld Documents are emails, memos and reports authored by Bank employees. Even the OCC Report itself—now more than 4-1/2 years stale—does not bear any legend indicating it is property of the United States government or confidential. OCC has not cited a single affidavit or other fact supporting its contention that the 41 Withheld Documents are government property. Rather, OCC's only cited authority is language from its own regulations. Beyond the fatal deficiency that the regulation is without statutory support and actually contradicts Congressional enactments (see above), common experience belies the notion that documents authored outside the regulatory agency are government property for purposes of *sovereign immunity* analysis.[6]

An additional flaw in OCC's sovereign immunity defense is the plain fact that even assuming *arguendo* any of the Withheld Documents could be considered government property (and therefore *arguendo* subject to immunity, notwithstanding the absence of any suit against the government), BDO has no interest in divesting OCC of its alleged ownership of the documents. Rather, BDO merely wants to inspect and copy the documents in the Bank's possession for the limited purpose of defending itself against the Bank's lawsuit. In addition, such limited use will be subject to a Stipulated Protective Order—an Order in substantially the same form as the form

---

[6] Whether such documents are covered by the qualified bank examination privilege is a separate matter, addressed in Section III below.

of protective order suggested in OCC's own regulations. *See* 12 C.F.R. §§ 4.31-4.40, Appendix A, Subpart A, Release of Non-Public OCC Information.

In sum, the circumstances here are a far cry from the state court litigant's effort in *Leiter* to divest the United States of mineral rights in real estate it owned. As a matter of law, sovereign immunity doctrine did not deprive the Superior Court of jurisdiction to order the Bank's production of documents in its possession.

### C.   OCC Waived Its Argument that the State Court Lacked Jurisdiction

Assuming *arguendo* this Court was inclined to extend the doctrine of sovereign immunity as advocated by OCC, the defense must still fail in the circumstances presented here because OCC twice requested the state court to adjudicate issues raised by OCC's privilege claim.

In July 2007, OCC directed the Bank to litigate in state court the substance of the OCC Regulatory Privilege asserted here. *See* letter of OCC Director, Litigation Division to Bank counsel, Ex. 13 to Cataldo Aff. If the Superior Court had ruled in favor of the Bank and OCC, then OCC would have been content and not claimed the Superior Court lacked jurisdiction to make the ruling. The Superior Court, however, ruled otherwise in November 2007. OCC subsequently filed in federal court the instant action against BDO. At the same time, however, OCC filed in state court a motion to submit a statement of interest and maintain status quo pending the resolution of this federal court action. *See* OCC Statement of Facts ("OCC SoF"), Exhibit 11. Thus, again, OCC presented the privilege issue to the state court. In response, the Superior Court ruled in March 2008 that OCC had no likelihood of success on its claim that the state court lacked jurisdiction to adjudicate the assertion of the bank examination privilege. In these circumstances, having previously litigated—directly and through the Bank—the privilege issue in state court, OCC has waived any argument that the state court lacked jurisdiction. *Cf.*

11

*Rosenthal v. Coates*, 148 U.S. 142, 147 (1893) (the removal statutes "do not contemplate that a party may experiment in [its] case in state court, and, upon an adverse decision, then transfer it to Federal Court"), followed in *Ohio v. Doe*, 433 F.3d 502, 507-08 (6th Cir. 2006).

If the state court lacked jurisdiction, why did OCC ask that *same state court* in January 2008 to stay its First Order? OCC has offered no answer to that question. If OCC had a meritorious privilege objection—factual support for which is entirely absent from its present summary judgment motion—it could have and should have intervened in the state court action, as invited by the Superior Court. *See Bank of New York*, 296 U.S. at 480-81.

### D.   OCC's Failure to Demonstrate Ownership of the Withheld Documents Compels Dismissal of This Case

Assuming *arguendo* OCC could clear each of the foregoing hurdles, its invocation of sovereign immunity would rest on the predicate that all of the 41 Withheld Documents are its property. OCC has presented no factual support for such predicate. Accordingly, summary judgment cannot be granted to OCC. *See Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35-36 (1st Cir. 1998)("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.") (emphasis in original).

### III.   EVEN IF THE SUPERIOR COURT WAS WITHOUT JURISDICTION, OCC'S MOTION FOR SUMMARY JUDGMENT MUST STILL BE DENIED BECAUSE OCC IS NOT ENTITLED TO THE DECLARATORY RELIEF IT SEEKS

Assuming *arguendo* OCC were to prevail on its argument that the Massachusetts Superior Court was without jurisdiction to enter the discovery orders, summary judgment is still not warranted with regard to all of the declaratory relief OCC seeks. In addition to an order regarding the state court's jurisdiction, OCC seeks declarations that (i) the only way for BDO to

obtain, posses, retain, or use for litigation purposes the Withheld Documents in BoA's

possession is for BDO to submit a request to OCC pursuant to 12 C.F.R. §§ 4.33, 4.34 (a request

OCC will consider in its sole discretion) (Complaint, ¶¶ 30, 31); (ii) the Withheld Documents are

(a) non-public OCC information that are (b) privileged pursuant to a qualified bank examination

privilege, which OCC has to waive in order for BoA to produce the Withheld Documents to

BDO (Complaint, ¶ 31); and (iii) OCC's decisions as to what constitutes OCC non-public

information, what constitutes OCC privileged information, and whether OCC will waive any

purported privilege are only reviewable under an abuse of discretion standard pursuant to the

Administrative Procedure Act, 5 U.S.C. §§704, 706(2)(A) (Complaint, ¶¶ 32, 33) (collectively,

the "Declaratory Requests").

As a matter of law, OCC is not entitled to any of the Declaratory Requests for the reasons

set forth below. Thus, OCC's motion for summary judgment should be denied and this case

should be dismissed. At most for OCC, its Declaratory Requests raise fact issues that cannot be

resolved on summary judgment and instead require discovery.

### A.     OCC Regulations Regarding OCC Documents Are Inapplicable Here Because They Do Not Apply To Suits In Which OCC Is A Party

OCC asks this Court to declare that for BDO to possess and use the Withheld Documents,

BDO "is required, first, to submit a request to the OCC that addresses the factors set forth in 12

C.F.R. § 4.33...." Complaint, ¶ 31. Now that OCC has sued BDO, this purported requirement

does not apply. OCC's Regulation clearly states: "This subpart [subpart C – Release of Non-

Public OCC Information] does not apply to a request for a record or testimony in a proceeding in

which the OCC is a party." 12 C.F.R. § 4.31(b)(2)(i). Thus, under the language of OCC's own

regulations, OCC is not entitled to a declaration that BDO must submit a request under 12 C.F.R.

§ 4.33. Summary judgment in OCC's favor must be denied.[7]

**B.     It Is the Court's Function to Adjudicate Privilege Claims, and Not Within the OCC's Province**

Under its regulations, OCC purports to arrogate to itself the role of determining privilege

claims. In that respect, the OCC Regulations are invalid and must yield to the judiciary's

exclusive power to adjudicate privilege assertions. "Judicial control over evidence in a case

cannot be abdicated to the caprice of executive officers." *Reynolds*, 345 U.S. at 9-10.

The OCC Regulations impose substantive limitations on a litigant's access to information

and documents. According to its own regulations, OCC can—at "its sole discretion" 12 C.F.R. §

4.35(a)—refuse to produce documents or information for which the requesting party has not

shown a "compelling need" or "an absence of other evidence reasonably suited to the requester's

needs." *Id.* OCC's Declaratory Requests go even further, beyond the language of those

Regulations, demanding a declaration that OCC determine whether documents are privileged,

after which OCC would then determine whether to waive such privilege. *Complaint*, ¶ 31.

OCC's substantive regulations and extraordinary Declaratory Requests far exceed the Supreme

Court's approval in *Touhy*, 340 U.S. at 467, of rules governing a subordinate employee's

handling of documents as directed by the department chief executive. OCC's Regulations and

Declaratory Requests run afoul of Congress' directive that federal agency housekeeping

regulations shall not accomplish "withholding information from the public or limiting the

availability of records to the public." 5 U.S.C. § 301.

---

[7] If BDO's Motion to Dismiss is denied, BDO may file counterclaims against OCC, seeking, among other relief, declarations that (i) BDO need not comply with 12 C.F.R. § 4.33; (ii) the Withheld Documents are not non-public OCC information subject to the qualified bank examination privilege, but even if they were, such privilege should be overridden pursuant to applicable case law.

It is the judiciary's role, not the OCC's, to determine whether any privilege applies. For example, in *In re Bankers Trust*, 61 F.3d 465, 471-72 (6th Cir. 1995), the circuit court ruled a litigant did not have to first present to the Federal Reserve for consideration a request for documents. Rather, it was the district court's job on remand to determine whether and, if so, the extent to which the bank examination privilege applied. In addition, by filing this action and requesting a declaration that the Withheld Documents are privileged, OCC has effectively submitted the privilege issue to this Court for determination. *See Delozier v. First National Bank of Gatlinburg*, 113 F.R.D. 522, 525 (E.D. Tenn. 1986).

For these reasons, this Court (assuming *arguendo* it concludes the state court lacks jurisdiction) must determine whether the qualified bank examination privilege applies. Because OCC has submitted nothing in support of its contention that such privilege bars production of the 41 Withheld Documents, its motion for summary judgment should be denied and this case should be dismissed. *See Torres Vargas*, 149 F.3d at 35-36 ("The party who has the burden of proof in a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.").

C.   **The Declaratory Relief Sought by OCC Involves Determinations of Disputed Factual Issues that Preclude Summary Judgment At this Stage**

OCC's Declaratory Requests rest on two conditions precedent that OCC simply asserts to be true: (1) the Withheld Documents are "non-public OCC information" and (2) the Withheld Documents are privileged pursuant to a qualified bank examination privilege. OCC, however, fails to put forward *any* evidence that such is the case. In fact, OCC has consistently acknowledged that it has not reviewed any of the Withheld Documents (other than OCC Report). Cataldo Aff. ¶ 1. This is so despite BDO's repeated requests that OCC review the Withheld Documents to determine whether it was going to assert a privilege as to each of the documents.

OCC has refused to do so. *Id.* Under such circumstances, OCC can not establish that, as a

matter of law, the Withheld Documents are privileged, non-public OCC information. Thus,

summary judgment should be denied.

### 1. Disputed Issues of Material Facts Exist Regarding Whether the Withheld Documents in BoA's Possession Are Non-Public OCC Information

As an initial matter, the OCC Regulations apply only to what OCC self-defines as "non-

public OCC information." *See* 12 C.F.R. 4.32(b). OCC, however, fails to present any facts that

would establish that the Withheld Documents are, in fact, non-public OCC information. To the

contrary, OCC baldly asserts that all of the Withheld Documents are non-public OCC

information because it says so. *See* OCC Memo of Law, p. 9 ("The forty-one documents that

BOA is withholding and the OCC Report are documents generated as part of OCC's examination

of the bank. They constitute non-public OCC information that BOA may not disclose to

Seidman, or anyone else, without the consent of OCC or, following the OCC's decision on a

*Touhy* request, in response to an order from a Federal court.").

OCC's self-serving conclusion begs the obvious question: how could OCC make such

determination when all of the Withheld Documents at issue are in BoA's possession, and OCC

admits that it has not reviewed any of them (other than OCC Report)? Cataldo Aff. ¶ 1. In fact,

a review of BoA's privilege log reveals that many of the documents are internal BoA documents,

such as emails and internal BoA memos. Cataldo Aff. Exhibit 2, pp. 4-8 (BoA Privilege Log).

Just as a single example, the first entry on page 6 of BoA's log asserts OCC privilege with regard

to an internal BoA document entitled "Status/Resolution Strategy" dated March 31, 2005. *Id.*

OCC's summary judgment submissions are devoid of any facts which would permit the court to

determine that this document – an internal BoA memo drafted two years after OCC's

examination—is "non-public OCC information." Because OCC fails to put forward any

evidence that the Withheld Documents fall within the purview OCC's self-defining regulation, summary judgment is precluded. *See Torres Vargas*, 149 F.3d at 35-36; *Delozier*, 113 F.R.D. at 525.

### 2. Even if OCC Could Establish that the Withheld Documents in BoA's Possession Are Non-Public OCC Information, Material Issues of Fact Exist as To Whether the Withheld Documents Are Subject To A Purported Qualified Bank Examination Privilege

Assuming *arguendo* OCC could establish that the Withheld Documents are non-public OCC information, OCC would still need to establish that the Withheld Documents are privileged in order to obtain the declaratory relief it seeks –namely that the Withheld Documents are privileged, and thus BDO must submit a request to OCC so that OCC can decide whether to waive its privilege. Complaint, ¶ 31.[8]

The determination of whether the qualified bank examination privilege applies to the Withheld Documents is necessarily based on the specifics facts regarding each individual document. *Bankers Trust*, 61 F.3d at 471-72. Again, because OCC fails to put forward any evidence that a qualified bank examination privilege applies to the Withheld Documents, its motion for summary judgment must be denied.

The bank examination privilege is a qualified, rather than absolute, privilege that applies only to the deliberative process of opinions or recommendations of government officials; "[p]urely factual material falls outside the privilege, and if relevant, must be produced." *Bankers Trust,* 61 F.3d at 471; *Principe v. Crossland Savings, FSB,* 149 F.R.D. 444, 447 (E.D.N.Y. 1993). The rationale for this distinction is that disclosure of factual material does not hinder the

---

[8]      As detailed in § III(A) above, OCC's suit against BDO renders the OCC Regulations inapplicable. Thus, even without a formal request from BDO, the issue of whether the Withheld Documents are privileged is properly litigated by this Court.

free flow of advice in government decision making. *Delozier v. First National Bank of Gatlinburg,* 113 F.R.D. 522, 525 (E.D.Tenn. 1986).

While BDO has obviously not reviewed all 41 of the Withheld Documents listed on BoA's privilege log, BDO has reviewed documents that BoA produced (without objection) which refer to and summarize OCC's findings. These documents do not appear to disclose any "deliberative" process by OCC, but rather merely summarize OCC's findings with regard to the CCCNNE portfolio. Summaries of OCC findings, however, do not implicate the qualified privilege. *Id.* (letter which was "a summary of the OCC's findings…is not information which is part of any deliberative process"). In fact, many courts have held that bank examination reports themselves are primarily factual in nature and thus are not privileged. *See, e.g., Principe,* 149 F.R.D. at 448 (bank examination reports factual in whole or in part); *In re Franklin National Bank Securities Litigation,* 478 F. Supp. 577, 585 (E.D.N.Y. 1979)("the content [of the bank examination report] is primarily reportorial and expository, not deliberative") and cases cited therein.

Moreover, documents drafted after the agency action (in this case, the OCC Report) are likewise not covered by the qualified bank examination privilege. *See N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 151-152 (1975)(collecting cases). As reasoned by the Supreme Court in *N.L.R.B.*:

> However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed. Accordingly, the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not.

(internal citations omitted).

Assuming *arguendo* OCC had advanced evidence indicating that the Withheld Documents included deliberative information, the qualified privilege still would not automatically shield production. *See Walsh*, 799 F. Supp. at 408 ("even when the government asserts the official information privilege with respect to opinions or recommendations, nondisclosure is not guaranteed"). Rather, "[s]trong competing interests must be weighed against the government's interest in non-disclosure. Foremost is the interest of the litigants, and ultimately society, in accurate judicial fact finding." *Id.* Thus, OCC's blanket request for a declaration that all of the Withheld Documents are privileged is incorrect as a matter of law.[9]

Because OCC's motion is devoid of any specific evidence or facts with regard to the Withheld Documents, a determination of whether the qualified bank examination privilege is applicable cannot be made. Thus, this Court should deny OCC's motion and dismiss this action or, alternatively, defer adjudication of the privilege claims until BDO has had an opportunity for discovery. *See* Defendant BDO Seidman, LLP's Motion, In the Alternative, for Discovery Pursuant to Fed. R. Civ. P. 56(f).

## CONCLUSION

BDO respectfully requests the Court deny OCC's cross motion for summary judgment, and dismiss this action.

---

[9]     BDO contends that an analysis of these factors support overriding any applicable qualified privilege. Neither OCC nor BoA disputes that OCC's findings are relevant to BDO's defense of BoA's multi-million dollar claims. Furthermore, no one disputes that the substance of OCC's examination is not available to BDO from any other source. As to the third factor, BoA seeks damages of approximately $25 million dollars - an amount which is certainly "serious." *See Deloizer,* 113 F.R.D. at 526. The fourth factor is not implicated because OCC is not substantively involved in the underlying litigation. Finally, as to the fifth factor, the Stipulated Protective Order already entered in the State Court Action sufficiently addresses any concerns regarding confidentiality of OCC information.

BDO SEIDMAN, LLP,

By its attorneys,

_____/s/ Kristin M. Cataldo_____
T. Christopher Donnelly (BBO# 129930)
Peter E. Gelhaar (BBO# 188310)
Kristin M. Cataldo (BBO# 654033)
Donnelly, Conroy and Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA  02108
Tel: (617) 720-2880

Dated:  April 15, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2008, a true copy of the above was filed electronically via this Court's CM-ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

_____/s/ Kristin M. Cataldo_____
Kristin M. Cataldo